IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

FILED by ___ D.C.

MAR - 1 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. - MIAMI

DARREL CUMMINGS
Inmate # 088532

Vs.                                            CASE NUMBER: 9: 12-CV-81413-WPD

NEW ENGLAND COMPOUNDING CENTER, CEO., BARRY CADEN,
GEO GROUP INC.,TOM LEVINS, WARDEN,
MS. N. FINNISSE, MSM, HSA,
DR. J. DAUPHIN, D.O.,
DR. JULES HELLER, M.D.,
DR. ROBERT LINS, M.D.,
OFFICER MCINTIRE, CO1,
    Defendant(s)
_____/

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATES REPORT**

COMES NOW, Plaintiff, Darrel Cummings, pro se, files his objections to the magistrate Judge P.A. White's report received on February 21, 2013. The report states in pertinent part that, "claims against Warden Levins, Finisse, Dr. Lins and Office McIntire, and the CEO of New England Compounding Center be dismissed pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted."

In opposition, Plaintiff set forth his objections which are more fully asserted in accompanying memorandum of law, and therefore, relief should be granted where legally sufficient claims has been or could be stated as follows:

## **MEMORANDUM OF LAW**

The magistrate's report seems to have applied a heightened standard of review. Whitehorn v. Harrelson, 758 F.2d 1416, 1419 (11th Cir. 1985), of review. (pro se. Complaints are held to less stringent standards than formal pleadings drafted by lawyers can only be dismissed for failure to state a claim if it appears beyond doubt that plaintiff can prove him to relief . . .").

Plaintiff has not ignored the federal rules of civil procedure requiring a short plain statement as to each Defendant and page requirements intentionally. Statements in complaint does not exceed 7 lines, and do to claims against seven Defendants an extension of 35 pages were needed. Nevertheless, complaint could be amended if the court respectfully grants leave.

The factual allegations as it pertain Warden Levins and to the health service administrator N. Finisse, has been misapprehended. Warden Levins and Ms. N. Finisse had personal knowledge from, Dr. Slutsky, the orthopedic surgon specialist, report, on August 26, 2011 that, plaintiff had conservative treatment with no improvement. Then on October 10, 2011 Dr. Slutsky submitted, that, nothing was helping . . . plan was trying a course of physical therapy and epidural injections prior to proceeding, with surgery. "He wants to consider surgery. That definitely is up to him . . ."

Thereafter, numerous grievances were filed not just the one refered to in the magistrates report, stating that "It was recommended he try other means before surgery." Id. P.4. These other means were 1. Physical therapy, 2. Epidural injections, and 3. Surgery by fusion of spine.

Plaintiff can prove by evidence from his inmate medical files that, Warden Levins and Ms. N. Finisse had knowledge from responses to grievances, and recklessly disregard a substantial risk of serious harm where, (1) absolutely no physical therapy was ever conducted.

As the magistrate's has correctly asserted, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Reg'l Youth Det. Cir., 40 F.3d 1176, 1187 (11th Cir. 1999); Lafaut v. Smith, 234 F.2d 389, 93, (4th Cir. 1987)(failure to provide rehabilitation therapy recommended by orthopedic specialist.); and Scott v. Garcia, 370 F. Supp.2d 1056 (S.D. Cal. 2005) Severe erosion no treatment stated claim.). (2) Severe and internal damage was diagnosed by specialist Dr. Slutsky on August 26, 2010. However, the epidural injection shots weren't completed until August 22, 2012. This reckless disregard and grossly incompetent delay, and prolonging of plaintiff's serious medical need caused plaintiff's injury to deteriorate to the point of severe and crippling results.

The epidural injection further do to contamination of medication made pain excruciating and paralyzing to where plaintiff is now temporarily disabled and confine to a wheel chair. See: Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997). The deliberate indifference standard may be met in instances where a prisoner is subjected to repeated examples of delay, denied or grossly incompetent or inadequate medical care; prison personnel fail to respond to a know medical problem; or prison doctors take the easier and less efficacious route in treating an inmate. See, e.g. Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). (3) It is apparent that this less efficacious route, coupled with the filing of grievances were apparent reasons of why surgery was denied. Irregardless of the fact that it was diagnosed by the orthopedic specialist surgon in the field. Warden Levins on November 28, 2011 and Ms. N. Finisse on September 21, 2011 stated in responses that, it was recommended he try other means before surgery [sic], that surgery has been denied plaintiff, when they had the authority to prevent excruciating pain, temporarily disability and life threatening disease, they did nothing to prevent resulting harm.

The court have held that pain, if experienced over sufficient time, may qualify as a serious medical need. See; Mcelligott v. Foley, 182 F.3d 1248 (11th Cir. 1999). The plaintiff here also contended he was in extreme pain over a period of years and that the Warden and Health Service Administrator had the authority and administrative force to carry out the approved and diagnosed surgery. However, they fail to respond to known medical problem, and outright refuse to treat plaintiff, which is an understatement, because this type of treatment is more akin to the case in Hudson v. McMillian, 503 U.S. 1, 112 S. Ct. 995 (1992)(When prison official malicious and sadistically use force to cause harm the result would be cruel and unusual punishment.); Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002)(under the 8th amendment every person convicted of a criminal offense has the right not to subject to cruel and unusual punishment.).

Essentially, where this type of conduct is so grossly incompetent, inadequate, and excessive as to shock the conscience and to be intolerable to fundamental fairness. See: Adams v. Poag, 61 F.3d 1537 (11th Cir. 1995). First, the plaintiff has thoroughly set forth evidence of an objectively serious medical need. Taylor, 221 F.3d at 1258; Adams at 1543.

As conceded to by the magistrate's report. Id. P.8., that, "Plaintiff has sufficiently alleged he has serious medical need." Second, here Plaintiff has proved beyond a doubt that Warden Levins, and Ms. N. Finisse HSA, who had overriding authority, also actively participated with Dr. Dauphin and Dr. Heller. These Doctors specifically delayed and prolonged surgery for years until Plaintiff was disabled and confined to a wheelchair. After which they refused and denied surgery after diagnosis with attitudes of deliberate indifference to Plaintiff serious medical needs. See: Farmer, 511 U.S. at 834; Mcelligott, 182 F.3d at 1254; Campbell, 169 F.3d at 1363. The objective component only requires the Plaintiff to demonstrate the he has been subjected to specific deprivations that are so serious that they deny him "the minimal civilized measure of

life's necessities . . ." Thus, satisfying the second requirement. Further, it should be noted that a retaliatory claim also exist against Warden Levins, Ms. N. Finisse, and Dr. Dalphin as was found in the magistrate's report against Dr. Heller.

Most importantly, they delayed, prolonged treatment, and denyed surgery for known and diagnosed injuries. When Plaintiff filed grievance his treatment plan was interfered with, delayed, prolonged to Plaintiff dismay and then denied, by all above mentioned Defendants. Claims of which were overlooked or misapprehended in this magistrates report. Claims of which also could be clarified by an amendment if necessary.

As to the magistrate's report pertaining to Dr. Lins, orthopedic specialist, who was refered to for consultation by the prison, and is also contracted to carry out surgical procedures for inmates. Even though Dr. Lins diagnosed the Plaintiff's conditions, he should have known that do to the extent of deteriorating damage to spine that the epidural injection shots would not have worked. However, despite the recommended diagnosis for surgery by specialist Dr. Slutsky. Dr. Lins did not oppose, but made no recommendation where he knew surgery was imminent while Plaintiff was still walking. It would seem as if Dr. Lins was used to circumvent the diagnosed surgery by fusion of the spine made by Dr. Slutsky in not treating Plaintiff based upon an alleged approval by prison facility. However, epidural injections were easier and a less efficacious route. Plaintiff personally requested surgery from this specialist in the field, an option given to him by specialist Dr. Slutsky.

However, he never recommended surgery or documented that I request imminent surgery do to excruciating pain, server damage to spine and deteriorating injury. This issue is here coupled where, Dr. Lins injected Plaintiff with the disease of fungal meningitis which is a direct attribute of Plaintiff's pain tripling in degree and being confined to a wheelchair. It would appear

that Dr. Lins was deliberate indifferent and negligent. Whereas the specialist in the field, he knew injury was deteriorating and ignored Dr. Slutsky's diagnosis of surgery, an option given to Plaintiff and he choose that option. He made no recommendation in support which could have prevented resulting harm and disability. He should not be dismissed.

The magistrate's report here has again overlooked, misapprehended the relevant facts as it pertains to Warden Levins and the Health Service Administrator, Ms. N. Finisse, who approved diagnosed treatment plan, being clearly knowledgeable of plaintiff's condition. However, do to the submission of numerous (App. 20) grievances. The physical therapy was denied the epidural injection where delayed and prolonged for years until injury deteriorated resulting in disability, and then the surgery was denied.

Further, the magistrate's report clearly misapprehended the relevant facts as it pertains to the Warden, appearing to be named in his supervisory capacity." Id. at 10. In review of Plaintiff's complaint it does appear to be unspecified, which may require an amendment if necessary and leave is permitted.

Thus, in specified clarification of this matter the Warden was not named in his supervisory capacity. Neither for his liability predicated on the theory of respondent superior. Warden Levins is rather named in his individual capacity as an active participant. As evidence of the Warden and Ms. Finisse' participation. Plaintiff directly asked them for help. See: Exhibit "F" Grievance Log #12-6-01054 Id. complaint P.18 par 68.,(grievance for imminent treatment. . . It is the responsibility of your Chief Health Officer [Ms. Finisse] to determine the appropriate treatment regimen for the condition you are experiencing . . .). This response was from the Secretary Department of Corrections, after the Warden read it and referred it to Ms. Finisse. This further clarifies their authority to take action. See also: Exhibit "I", Grievance Log #1210-405-

031 Id. P. 25 par. 105, emergency directly to the Warden, requesting him to contact the CDC (Center for Disease Control), urgent. Do to unusual and excruciating pain that caused clapse. Contaminated shot (fungal meningitis) . . .

Ms. Finisse, and Dr. Heller neither contacted the CDC or Health Department where I had lost my ability to walk or stand. Neither schedule any adequate treatment or surgery for excruciating pain and disability . . . See: Gordon v. Frank, 454 F.3d at 862 (8th Cir. 2006)("Plaintiff asked for help . . . intentional delay in providing medical treatment shows deliberate disregard . . . a reasonable officer would known that it is unlawful to delay medical treatment."); contrary to the magistrates report and clearly distinguish legal authority. Plaintiff can prove that, Warden Levins and Ms. Finisse on numerous occasions personally responded to Plaintiff's grievances where he alleged excruciating pain, substantial risk of serious harm, and death, which place them on notice of deteriorating conditions, and they did nothing to prevent resulting harm of disability. See: Farmer v. Brennen, 511 U.S. 825, 828-29, 114 S.Ct. 1970 (1994)("A prison official is deliberate indifferent to a substantial risk of serious harm to inmates if official is subjectively aware of the risk and does nothing to prevent the resulting harm." Deliberate indifference is that an official "both be aware of facts from which the inference could be drawn that the substantial risk of serious harm exists, and he must also draw the inference. Id at 837; Rodriguez v. Sec. Dept. of Corr., 508 F.3d 611 (C.A. 11th Cir. 2007), prison official violates the 8th amendment when he substantively knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an objectively reasonable manner.); Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388 at 1896 (8th Cir. 1997)("Superintendent Delo assets that the trial court erred in finding that he had been place on

notice . . . but he fail to take appropriate action . . . Delo had knowledge . . . Delo received complaints . . . Delo took no action in response to this information and was liable . . .).

Thus, Warden Levins and Ms. Finisse were placed on notice, but fail to take appropriated action. They had knowledge from persistent grievances but took no action in response to prevent resulting harm to Plaintiff. Also See: Supplemental Grievance forwarded to Plaintiff after the submission of his civil complaint here marked as Exhibit "M" (Grievance from secretary DOC, blatantly responded to dated January 24, 2013, in reference to Warden Levins, Ms. N. Finisse and Dr. Heller's responses to know diagnosed injury since April 10, 2012 and blatant disregard and denial of treatment as result of the submission of grievances since September 21, 2011.).

"It is well established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his first amendment rights." Pate v. Peel, 256 F. Supp.2d 1326, 1336 (N. D. Fla. 2003), citing Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).

Retaliation in the prison setting may be established by demonstrating that a prison official took adverse actions against an inmate because he filed a grievance. See: Farrow, at 1248; Pate at 1336.

Thus, Plaintiff must demonstrate (1) that he engaged in protected activity; (It is unrefuted that Plaintiff filed grievance concerning treatment); (2) Suffering an adverse action because of activity; (It is unrefuted that Plaintiff suffers excruciating pain and disability because of the prolonging, delay and denial of treatment); (3) Show a causal connection between the two. (As a result of grievances to Warden Levins, Ms. N. Finisse, Dr. Dauphin, and Dr. Heller, treatment was prolonged, delayed and stopped).

Plaintiff has come forward with this evidence, the burden shifts to the Defendant to prove that they would have taken the same actions anyway for legitimate reasons. If claims are not clear for deliberate indifference and/or retaliation Plaintiff seeks leave to amend. Defendant's Levins and Finisse should not be dismissed.

The magistrate's report as it pertains to Officer McIntire, is unclear, because outside of paragraphs 89-93 alleged in civil complaint reference need to be made to supplemental grievances that he belatedly received on January 9, 2013 after the submission of complaint. Here incorporated as Exhibit "N", Grievance Log# 12-6-40195.

In clarification of claim by reference to grievances, which the magistrate did not possess when conducting his report. Here, what is clearly apparent is that Officer McIntire stated, that she was not aware of Plaintiff's condition at the time or that another officer advised him to sit in a chair. Further, McIntire stated, that when Plaintiff advised her of his condition after he attempted to get up and walk and could not. She claim she was not deliberate indifferent because she did not have full knowledge.

Plaintiff refutes these allegation: In attached Initial Grievance Log# 12-2102, dated October 4, 2012, and responded to on October 26, 2012 Plaintiff specifically informed Officer McIntire before he was ordered to get up and fell into a steal door, aggravating injury and pain. Here it stated "McIntire contrary to declared emergency re-ordered me to get the hell out of her chair" when [I] informed [Her] . . . I couldn't walk or stand maybe do to previous surgery. She nefariously stated, "she didn't give a damn and get your ass out of my chair . . ." Her response to grievance" was [she] followed protocol in notifying medical of your [Plaintiff] emergency you received treatment in a timely manner . . ." Id attached Grievance Log# 12-2102. Here, she never stated she was not aware of condition his, was advised after he couldn't walk or that she did not

have full knowledge. However, Officer McIntire concedes that Plaintiff had an emergency, and she notified medical in a timely manner.

The fact of the matter is Officer McIntire did not follow protocol, essentially where she did not notify medical of Plaintiff's emergency which interfered, delayed and prolonged treatment in a timely manner. Officer McIntire statement here that, she notified medical is directly contradicted by attached Grievance Log# 1211-405-006 where in pertinent part Sgt. Scott stated that ". . . he notified medical . . ."

It is clearly evident that not only was Officer McIntire, uncandid with the exhaustion of this administrative proceedings before resulting to judicial resolution. More importantly, she was deliberate indifferent to Plaintiff's known and serious medical needs, because she interference and delay of treatment and caused unnecessary and wanton infliction of pain by the serious aggravation of Plaintiff's injury.

Plaintiff was ordered, "to get the hell out of her chair" and when she was advised by Plaintiff that he could not walk or stand do to previous surgical procedural (of epidural injection). She became so grossly incompetent, inadequate, and excessively indifferent to be intolerable to the fundamental fairness of human decency. Officer McIntire stated after being informed of condition and previous surgery that "[she] didn't give a damn and to get my butt (ass) out of her chair." Id. Grievance Log# 2102.

The Eleventh Circuit has held, "that an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuse to obtain medical treatment for inmate." Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997). "The deliberate indifference standard may be met where a prisoner is subjected to delayed, denied, or grossly incompetent . . . when prison personal fail to respond to a known medical problem . . ."

See e.g., Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989); Palermo v. Corr. Med. Servs, 135 F. Supp.2d 1348 (Fla. (S. D.) 2001)( The Supreme Court established the standard for Eighth Amendment cases involving the medical needs of prisoners in Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The Court held that in order to prove an Eighth Amendment violation, the plaintiff must show that the defendant acted with deliberate indifference to the serious medical needs of the prisoner. Id. at 104, 97 S. Ct. at 291. This indifference can be manifested by prison doctors in their response to the prisoner's needs or by prison guards who intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed. Id. at 104-05, 97 S. Ct. at 291.) Id. Farmer, at 825, 834, the subjective component requires the Plaintiff to demonstrate that the prison official acted wantonly, with deliberately indifference to Plaintiff's serious needs . . . Deliberate indifference is the reckless disregard of a substantial risk of harm. Id. at 835-836. In the instant case harm was caused.

Further, in Tekle v. U. S., 511 F.3d 839 (9th C. A. 2006)(He consented to order, still was thrown to the ground when no law was broken.); Skritch v. Thornton, 208 F.3d 1295 (11th Cir. 2002)(It is unlawful to inflict punishment upon a prisoner when he is no longer able to pose a threat to guards ability to maintain order or resist guards directions or engage in disruptive behavior.).

Under the Whitley approach, the extent of injury suffered by inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" In a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. The absence of serious injury is therefore is relevant to the 8th amendment inquiry, but does not end it. Id. Whitley, 475 U.S. at 321.

Thus, based upon the above mentioned clarification of facts and legal authority in support Plaintiff has clearly stated a claim. Plaintiff has set forth a genuine issue of material disputed facts for which a reasonable jury will find in his favor. Essentially where discovery has not yet been ordered, statements from numerous witnesses to this incident has not been collected or other evidence. Nevertheless, if amendment is needed to complaint Plaintiff respectfully seeks leave of the court, because this Defendant should not be dismissed.

The magistrate's report has finally overlooked or misapprehend in part the relevant facts as they pertain to the CEO of New England compounding Center (NECC). Whereas here, this corporations is rather being sued regarding, "the nationwide outbreak of the deadly fungal meningitis disease," from contaminated medication used to conduct the epidural steroid injections procedures for serious back pains. During the period between July, through September 2012. This corporation with its principle place of business in Framingham, Massachusetts, and unincorporated in the State of Florida, circumvented inspectors of The Food and Drug Administrative (FDA). They distributed their tainted and contaminated medication all over the United States. The results of which was a nationwide disease. Reports from the U.S.A. Today and World News stated there were approximately 550 illness and 60 deaths. Plaintiff received epidural injections approximately on July 16, 2012, August 1, 2012, and the last and must fatal on August 22, 2012. These dates are evident from Plaintiff's inmate medical files during the exact period of contaminated months of July thur September 2012. These contaminated injections left Plaintiff in excruciating pain 3× worse, disable and confine to a wheel chair. This issue is coupled with severity of injury, the interference, delay, prolonging and denial of adequate treatment. Plaintiff has filed claim against NECC, Corporation in the United States

District Court of Florida, because the opposing party principle place of business is diversely in Massachusetts.

Further, the matter of controversy exceeds the sum or value of 75,000.00 exclusive of interest and cost. More specifically, the Plaintiff in the instant case has requested damages in the amount of $250,000.00 compensatory damages alone, and $750,000.00 punitive, totaling $1,000,000.00 in damages. This most Honorable Court could retain diversity jurisdiction over all possible state law claims and liberally grant Plaintiff leave to construe allegations in complaint by amendment. Because as the magistrates report has correctly pointed out, this is "a State tort for negligence . . ." However, relief could be found in the United States Court if permitted to incorporate claim, if the U.S. Court respectfully retained jurisdiction. See: Miller v. R. J. Reynolds Tobacco, Co., 502 F. Supp.2d 1265 (11th Cir. 2007), Federal courts have the power to exercise jurisdiction over "any civil action brought in a state court of which the United States have original jurisdiction" 28 U.S.C. 1441(a). Federal law grants federal courts "original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States "and all civil actions where the opposing parties are diverse" and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs." 28 U.S.C. 1331 and 1332(a). See: Davila v. Secure Pharm. Plus, 329 F. Supp.2d 311 (2004 D.C. Conn,)(After inmates federal claims against pharmacy for incorrectly labeling medication were dismissed, district court retained diversity jurisdiction over all possible state law claims and liberally construing allegations in complaint, noted that inmate could state claim for negligence, malpractice or product liability.).

Plaintiff is unaware of the existence of the class action litigates in the State of Florida. Although, the Plaintiff has receive notice from Massachusetts, the United States Bankruptcy

Court. Case No.: 12-19882 informing him that a proof of claim (B10) will soon be required, as part of the Nationwide Class. Thus, it is imperative that the U.S. Court in Florida retain jurisdiction of this matter, or issue a stay of proceedings until a transferee court is selected. See: 2010 U.S. Dist. Lexis 96964 Kline v. Earl Stewart Holdings, LLC., (Fla. S. D. 2010)(Pending the determination by the United States Judicial panel on multidistrict litigation (JPML), of transfer Defendant cities to numerous district court decisions to support its argument that both judicial and party resources will be conserved if rulings in this case are stayed until a transferee court is selected. Plaintiff opposes the motion, arguing that the court lacks subject matter jurisdiction, as asserted in his motion for remand. Defendant removed this action from state court pursuant to the class action fairness act ("CAFA") . . . The U.S. Court of appeals for the Eleventh Circuit recently held that at least one individual Plaintiff under (CAFA) must allege damages of $75.000.00. The minimum amount in controversy for diversity jurisdiction. Cappuccitti v. Direc. TV, Inc., 611 F.3d 1272, 2010 WL. 2803093 (11th Cir. 2010); and 28 U.S.C. 1332(a)); and, 2008 U.S. Dist. Lexis 88421: Gavitt v. Merck and Co, (quoting In re Vioxx Products Liability Litigation, 360 F. Supp.2d 1352 (JPML)(Coordinated all product liability cases on drugs.); and, In re: Briscoe et. al., 448 F.3d 201; 2006 U.S. App. Lexis 11990, (Petitioner patients sued respondents, a pharmaceutical company and physicians, in Texas State Courts for products liability and malpractice. The company removed the patients cases, which were transferred to the United States District Court for the Eastern District of Pennsylvania as part of multidistrict litigation. The district court denied the patients motion for remand . . . patients who brought claims arising from their use of diet drugs were not entitled to mandamus . . . requiring a district court to remand their claim to State Court.).

WHEREFORE, Plaintiff conclusion respectfully request that this most Honorable Court **grant** all claims against all named Defendants, and further retain diversity jurisdiction over this matter, or issue a stay of proceedings that, the United States Judicial panel on multidistrict litigation may select a transferee court. Thus, proof of claims are pending in the U.S. Bankruptcy Court, in Massachusetts, and if this claim is here dismissed it may hamper Plaintiff's rights to recovery in the Bankruptcy Court.

Dated this 26th day of February 2013.

Darrel Cummings pro se
DC# 088532
South Bay Corr. Fac.
P. O. Box 7171
South Bay, FL 33493