UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81413-CIV-DIMITROULEAS/SNOW

DARREL CUMMINGS,

    Plaintiff,
vs.

NEW ENGLAND COMPOUNDING CENTER
*et al.*,

    Defendants.
_____/

## ORDER ADOPTING IN PART REPORT AND RECOMMENDATION AND SUSTAINING IN PART OBJECTIONS

THIS CAUSE is before the Court upon the February 15, 2013 Report and Recommendation of Magistrate Judge Patrick A. White [DE 11].  The Court has conducted a de novo review of the Report and Recommendation, carefully considered Plaintiff's Objections [DE 14], the supplement to those objections [DE 15], the motion to correct a clerical error in the objections, [DE 16], and the record herein, and is otherwise fully advised in the premises.

For context, the Court will begin by setting forth Plaintiff's allegations in his Complaint.[1]  Plaintiff arrived at the South Bay Correctional Facility in March 2010.  He complained to the interviewing nurse about back and side pains.  Defendant Dr. Jean Dauphin examined him on April 10,2 010.  Plaintiff had a history in his medical file with x-rays taken on August 10, 2007

---

[1] The Court assumes that these facts are true for the purposes of this Order, *Aschroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), but makes no findings of fact.

1

that indicated mild degenerative disc change at L5 S1.  Nevertheless, Dr. Dauphin did not provide treatment, so Plaintiff claims Dauphin demonstrated deliberate indifference.

Plaintiff continued to repeatedly complain about back pains radiating to his left leg.  He apparently had been given medication for his pain, but that medicine was not working.  He was evaluated on August 5, 2011 and again on August 11, 2011.  On August 11, Dr. Robert Smalley observed significant back problems due to spondylolisthesis and a degenerative disc.  Compared to his medical record from 2007, Plaintiff's condition had worsened over the intervening four years. Plaintiff asserts that Dr. Dauphin's lack of treatment caused the deterioration.  Furthermore, Dr. Dauphin was aware of the deterioration because he reviewed Dr. Smalley's report on August 15, 2011.

Dr. Bradford A. Slutsky, an orthopedic specialist, examined Plaintiff on August 26, 2011.  Dr. Slutsky's notes record that Plaintiff has been suffering from back pain for four years and that anti-inflammatory and muscle relaxation medicine had not alleviated Plaintiff's pain.  He found Grade 2 spondylolisthesis.  He recommended an MRI because conservative treatment had not yielded any improvement and there were signs of nerve impingement.  He showed Plaintiffs x-rays and explained that there was no way therapy or a shot could cure the damage. [DE 1 ¶ 29].[2]  Dr. Dauphin received this recommendation on August 29, 2011.

On September 1, 2011, Plaintiff made a medical request because of back pain.  Dr. Dapuhin changed the pain medication to ibuprofen.  On September 16, 2011, Plaintiff had an MRI.  The MRI revealed grade 2 spondylolisthesis, lumerization of S1, 25 percent subluxation of

---

[2] This allegation is contradicted because he also alleges that on October 10, 2011, Dr. Slutsky recommended physical therapy and epidural injections. [DE 1 ¶ 20].

L5 on S1, degenerative marrow signal changes with disc bulge, severe bilateral facet hypertrophy, and severe foraminal narrowing.  Dr. Dauphin read the report on September 25, 2011.

Plaintiff returned to Dr. Slutsky's office on October 10, 2011.  He recommended a course of physical therapy and epidural injections.  These would be prior to a "large fusion" surgery. [DE 1 ¶ 20].  He noted that surgery was "definitely up to [Plaintiff]." *Id.*

Dr. Dauphin never gave Plaintiff the option of surgery.  He told Plaintiff that "surgery was out of the question because the budget was not going to allow it."  Plaintiff claims that Dr. Dauphin never viewed the x-rays which showed the disc totally out of line and the nerve being pinched, which was a significant medical condition Plaintiff believes any layman could recognize.  Nevertheless, Dr. Dauphin "question[ed] the validity of the recommendation given by the orthopedic surgeon" because "it will not work." *Id.* ¶ 23.  Instead, Dr. Dauphin increased pain medication and wrote a consultation for epidural injections.

Defendant Finisse, the health service administrator, informed Plaintiff in response to one of Plaintiff's grievances that it was recommended to try physical therapy and epidural injections before surgery.  Plaintiff claims that Finisse was deliberately indifferent by not allowing Plaintiff the option of surgery that Dr. Slutsky had noted could be up to Plaintiff.

Plaintiff claims that the Warden also was aware of his ongoing grievances and referred them to Finisse.  Because the Warden chose to ignore Plaintiff's significant pain and request for surgery, Plaintiff claims that the Warden was deliberately indifferent to his medical needs.

Plaintiff saw Defendant Dr. Lins, another orthopedic specialist, on November 22, 2011. Dr. Lins said that epidural injections would not cure the pinched nerves but could provide

3

temporary relief.  Plaintiff claims that Dr. Lins was deliberately indifferent because it took nearly year from this first meeting before epidural injections were given.  He also faults him for never recommending surgery.

Plaintiff's pain continued to February 7, 2012, six months after his spondylolisthesis went from Grade 1 to Grade 2.  He claims that his pain was progressing and his condition deteriorating.  Epidural injections were not conducted until July-August 2012.  That was almost a year after such shots had been recommended.

A new doctor then began seeing Plaintiff at the prison, Defendant Dr. Heller.  Dr. Heller saw Plaintiff on September 5, 2012.  He provided no treatment, even though Plaintiff was complaining of deep pain all over.  He did refer him back to Dr. Lins for a lumbar injection, but then cancelled that injection.  Plaintiff claims that Dr. Heller was indifferent to Plaintiff's medical needs and purposefully avoided treating him.

Dr. Lins sent Plaintiff a letter dated October 5, 2012 about the possibility his epidural shots had been contaminated by fungal meningitis.  Plaintiff displayed symptoms of such an infection.  Plaintiff complained to the Warden via a grievance on October 7, 2012 asking him to contact the Centers for Disease Control due to the possible infection, but the Warden did nothing.  He also contacted Dr. Lins on October 16, 2012, but Dr. Lins did not respond.  No one tested Plaintiff for infection though he was exhibiting infection symptoms. Plaintiff had filed a grievance against Dr. Heller on October 4, 2012, so Plaintiff claims that the lack of action after the infection was due to retaliation.

Toward the end of his complaint, Plaintiff introduces one final defendant.  Defendant Officer McIntire was allegedly deliberately indifferent to Plaintiff's medical needs.  Plaintiff

claims that due to extreme pain in his back, he fell and grabbed a chair to avoid hitting the ground. He pulled himself in to the chair, and then Officer McIntire threatened him and forced him to move out of the chair. Plaintiff then fell.

## JUDGE WHITE'S REPORT AND RECOMMENDATION

Judge White screened Plaintiff's *pro se* complaint under 28 U.S.C. § 1915. Judge White properly set forth the standard for evaluating 42 U.S.C. § 1983 claims for violations of the Eighth Amendment. As he noted,

> The Eighth Amendment prohibits any punishment which violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173(1976)); *see also Campbell v. Sikes*, 169 F.3d 1353, 1363 (11 Cir. 1999). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" *McElligott v. Foley*, 182 F.3d 1248, 1254 (11 Cir. 1999) (citation omitted).

[DE 11 at 5]. Judge White observed, and this Court agrees, that Plaintiff has alleged that he suffered from an objectively serious medical need.

Plaintiff must also show, however, that the prison officials acted wantonly, with deliberate indifference to Plaintiff's serious needs. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). Mere negligence is not enough. *Farmer*, 511 U.S. at 835. Therefore, claims of medical malpractice or negligent diagnosis and treatment are insufficient. *Estelle*, 429 U.S. at 106. There most be "something more than a medical judgment call, an accident, or an inadvertent failure." *Murrell v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[3] As a result, a prisoner's disagreement with a prescribed course of treatment,

---

[3] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th

standing alone, is not enough to state a claim.  *See* [DE 11 at 7 (citing cases)]; *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir.1995) (holding that whether prison officials should have employed additional diagnostic techniques or care is an example of medical judgment and not an appropriate basis for § 1983 liability.).

However, deliberate indifference is shown if an official "acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997).  Alternately, the deliberate indifference standard can be met if the prisoner has treatment repeatedly delayed, denied, or provided with gross incompetence, or if doctors take the easier and less efficacious route in treating the inmate.  *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).

The Court agrees with Judge White that Plaintiff has stated a claim for deliberate indifference against Defendants Dauphin and Heller for grossly delaying treatment for a serious medical need.  The Court also agrees the Plaintiff has stated a claim for retaliation against Heller.

Judge White recommended that the suit against Dr. Lins be dismissed, because Lins was simply an orthopedic specialist that the prison referred Plaintiff to and could only treat Plaintiff with the prison's approval.  Plaintiff objected, arguing that Dr. Lins should have known that his recommendation of epidural shots without surgery would not be efficacious.  The Court agrees with Judge White that Plaintiff has not provided sufficient allegations for the Court to conclude that Dr. Lins was deliberately indifferent to Plaintiff's medical needs; instead, all Plaintiff has alleged is that Dr. Lins' prescription was insufficient and he disagrees with it.  That is not enough

---

Cir. 1981).

to state a claim.  *Cf. Murrell*, 615 F.2d at 310 n. 4.  The Court also agrees that Plaintiff's allegations do not show that Dr. Lins was dragging his feet in providing sufficient care.  Dr. Lins could only act with the approval of the prison.  Finally, the Court notes that there is insufficient allegation that Dr. Lins knew he was injecting Plaintiff with epidural shots infected with fungal meningitis, so there is no claim for deliberate indifference on the basis of those shots, either.

Judge White also recommended that the Warden and Finisse, the health administrator, be dismissed.  Judge White believed that Plaintiff was suing these two in their supervisory capacity.  Because Plaintiff had not alleged facts supporting liability under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), Judge White dismissed these Defendants.

Plaintiff objects, arguing that he was suing these defendants in their individual capacity.  He claims that he addressed grievances to them and that they were personally aware of the grievances and were doing nothing to help Plaintiff.  He therefore attempts to sidestep Judge White's conclusion that a Plaintiff has no cause of action for a dysfunctional grievance system.  As Plaintiff tries to clarify, he is not suing about the denials of grievances per se, but rather the fact that the Warden and Finisse knew that Plaintiff was suffering with insufficient medical attention, had it within their power to correct his problems, and chose to do nothing.

Even under Plaintiff's clarifications, the warden's only involvement was in the denial of grievances.  As the Tenth Circuit has held, "Whatever knowledge [the warden] may have had when he denied the appeal, his only involvement was to deny the grievance appeal, which is insufficient for § 1983 liability."  *Weldon v. Ramstad-Hvass*, 2013 WL 791619, at *10 (10th Cir. Mar. 5, 2013) (citing *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012)); *see also Washington v. Showalter*, 2012 WL 3641930, at *2 (3d Cir. Aug. 27, 2012) (finding review of

grievance insufficient participation absent a reason to believe or actual knowledge that prison doctors were mistreating prisoner); *Gevas v. Mitchell*, 492 F. App'x 654, *6 (7th Cir. 2012) (finding warden not liable because "ruling against a prisoner on an administrative complaint does not cause or contribute to the violation" (citation omitted)).

The situation for Finisse is different. The allegations of the complaint are unclear, but it appears that as health administrator she is more than just a grievance officer. As such, she could be liable for not coordinating medical care for Plaintiff. *See Gevas*, 492 F. App'x at *6. The Court will reexamine Finisse's position and involvement if she desires to make a motion for summary judgment. The Court sustains Plaintiff's objections as to Finisse and overrules Judge White's report on this point.

Moving on to Officer McIntire, Judge White found that Plaintiff's claim against her was ambiguous and recommended dismissal. In his objections, Plaintiff claims that Officer McIntire was aware of Plaintiff's severe back problems and nevertheless threatened him until he abandoned the chair he was sitting in. He also states that she was aware of Plaintiff's condition when he told he had to get out of her chair and did not notify the medical department of Plaintiff's emergency collapse. According to Plaintiff's objections, "McIntire contrary to declared emergency re-ordered me to get the hell out of her chair' when [I] informed [her] . . . I couldn't walk or stand maybe do to previous surgery. She nefariously stated, 'she didn't give a damn and get your ass out of my chair.'" She then did not report that Plaintiff was having a medical emergency and had colapsed. Plaintiff believes Officer McIntire's actions were deliberately indifferent to his medical needs and constitute cruel and unusual punishment.

"[A]n official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster,* 116 F.3d at 1425.  In addition, when a plaintiff alleges that a prison official used excessive force in violation of the Eighth Amendment, the Court's inquiry is whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  The Court finds that Plaintiff's additional facts asserted in his objection possibly could make out a claim for deliberate indifference or cruel or unusual punishment, but they were not alleged.  The Court will therefore grant leave to amend Plaintiff's complaint to clarify and full set forth the facts and legal theories under which he is suing Officer McIntire.

Finally, Judge White dismissed the claim against the New England Compounding Center, the company potentially liable for contaminating the epidural shots with fungal meningitis. Judge White said that the claim was a state law claim.  That is true, but this Court can have jurisdiction over state law claims under 28 U.S.C. §1332 for diversity or 28 U.S.C. §1367 for supplemental claims.  The Court therefore finds that the claim should not be dismissed for lack of jurisdiction, but does continue to stay the action as to New England Compounding Center due to its bankruptcy.  *See* [DE 6].

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The February 15, 2013 Report and Recommendation of Magistrate Judge Patrick A. White [DE 11] is **ADOPTED** and **APPROVED IN PART**.
2. This action may proceed against Defendants Dauphin and Heller for deliberate indifference and against Defendant Heller for retaliation.  If Plaintiff desires to

state retaliation claims against other defendants, Plaintiff must file an amended complaint;

3. As Plaintiff's complaint currently stands, the Court approves Judge White's recommendation that Officer McIntire be dismissed.  If Plaintiff desires to make a claim against Officer McIntire, then Plaintiff may file an amended complaint on or before April 5, 2013 with all necessary allegations.

4. The Court approves Judge White's recommendation the Defendant Lins be dismissed;

5. The Court approves Judge White's recommendation that the Warden be dismissed;

6. The Report and Recommendation is **OVERRULED IN PART** inasmuch as it recommended dismissing Defendants Finisse and New England Compounding Center.  Plaintiff's claims against Defendant Finisse and the New England Compounding Center remain pending, though this action is stayed as to New England Compounding Center;

7. The Court **GRANTS** Plaintiff's motion to correct clerical errors [DE 16];

8. The Court refers this matter to Judge White for further proceedings as appropriate, including the pending request for an injunction [DE-17].

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 12th day of March, 2013.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies Furnished to:
Counsel of Record

Darrel Cummings, pro se